IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JACLYN MCINTYRE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 20-00672-CV-W-BP |
| ) | |
| MEDICAL SOLUTIONS, LLC, ) | |
| ) | |
| Defendant. ) | |

## **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Pending is Defendant's motion to compel arbitration. (Doc. 15). For the following reasons, the motion is **GRANTED**, and this case is stayed pending arbitration.

## **I. BACKGROUND**

Plaintiff Jaclyn McIntyre has been employed as a travel nurse by Defendant Medical Solutions, LLC for several periods of time between February 2016 and March 2020. (Doc. 1-1, ¶¶ 7, 14.) A travel nurse is a qualified nurse who works for short stints in different hospitals across the country; Defendant is an agency that places travel nurses in hospitals. (Doc. 1-1, ¶ 8.)

Plaintiff's most recent period of employment with Defendant began in February 2020. (Doc. 15-2, ¶ 5.) At that time, Plaintiff electronically signed several documents relating to her employment and Defendant's policies. (Doc. 15, ¶ 2.) Specifically, Plaintiff:

- checked a box on Defendant's handbook acknowledgment form stating, "I have read, understood, and agree to be legally bound by the terms of the arbitration policy" in Defendant's Employee Handbook, and electronically signed that form (the "Handbook Acknowledgment", Doc. 15-4; quote cleaned up);

- placed her electronic signature on a document stating that she "acknowledges and agrees that [she] has read and understands the Employee handbook, including its Arbitration Policy, to which [she] agrees to be bound by signing this Agreement," (the "Consultant Agreement," Doc. 15-5, p. 3); and

- placed her electronic signature on a second document stating that "the terms and conditions of the Arbitration Policy are incorporated herein by this reference and [Plaintiff] agree[s] to be bound by its terms." (The "Travel Assignment Agreement," Doc. 15-6, p. 1.)

The Handbook Acknowledgment comprises a series of checkboxes relating to various provisions in Defendant's employee handbook. (Doc. 15-4.) Plaintiff checked all but one of these boxes; the one she did not check related to her participation in two pending class-action lawsuits. (Doc. 15-4, p. 1.)

The Arbitration Policy referenced in these various agreements, which appears in Defendant's employee handbook, provides that Plaintiff and Defendant "will resolve any and all disputes, claims or controversies of any kind or nature, including but not limited to such matters arising from, related to or in connection with, [Plaintiff's] employment with [Defendant] or its termination . . . by final and binding arbitration before a single neutral arbitrator." (The "Arbitration Policy," Doc. 15-7, p. 1.) The Arbitration Policy specifies that by accepting it, an employee waives her right to participate in class action lawsuits. (Doc. 15-7, p. 1.) The Policy also includes a clause indicating that "the arbitrator . . . shall have the exclusive authority to resolve any issue relating to the interpretation, applicability, enforceability or formation of this Arbitration Policy (including but not limited to any claim that all or any part of this Arbitration Policy is void or voidable." (The "Delegation Clause", Doc. 15-7, p. 2.)

Plaintiff later stopped working for Defendant. She brought a Petition in state court, alleging that Defendant wrongfully terminated her and withheld her salary for complaining about a hospital's inadequate COVID-19 safety precautions. (Doc. 1-1, ¶¶ 16–33.) The Petition asserts a panoply of claims against Defendant, including breach of contract and retaliation. (*See generally* Doc. 1-1.) Defendant removed to this Court on September 12, 2020, (Doc. 1), and has now filed

a motion to dismiss or stay this case and enforce the arbitration agreements Plaintiff signed. (Doc. 15.) Plaintiff argues that the arbitration agreements are invalid. (Doc. 20.) The Court resolves these issues below.

## II. DISCUSSION

Under the Federal Arbitration Act, "[a] motion to compel arbitration must be granted if a valid arbitration clause exists which encompasses the dispute between the parties." *M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1156 (8th Cir. 2012) (quotations omitted); 9 U.S.C. §§ 2, 4. "The validity of the arbitration agreement is determined by state contract law." *EEOC v. Woodmen of the World Life Ins. Soc'y*, 479 F.3d 561, 565 (8th Cir. 2007). Here, both parties assume that Missouri law governs the agreements at issue, and the Court follows suit.

Plaintiff does not dispute that the Arbitration Policy exists and encompasses the subject matter of her lawsuit. (Doc. 20, p. 2.) Nor does she contest that she checked a box agreeing to be bound by the Arbitration Policy in the Handbook Acknowledgment. (*Id.*) Neither still does she deny that she placed her electronic signature on the Consultant and Travel Assignment Agreements, which purported to incorporate the Arbitration Policy. (*Id.*) Instead, Plaintiff argues that because she refused to check the box related to pending class actions in the Handbook Acknowledgment, and because the Arbitration Policy included a waiver of Plaintiff's right to participate in those class actions, she and Defendant never agreed to "all essential terms"—and hence there was never an enforceable employment contract. (Doc. 20, pp. 2–6.)

Defendant counters with two arguments. First, it contends that the overall validity of Plaintiff's employment contract is an issue of contract formation, and that the Delegation Clause

3

requires such issues to be decided by an arbitrator rather than the Court. (Doc. 15-1, p. 7.) Second, it argues that Plaintiff's failure to check the box on the Handbook Acknowledgment is not enough to invalidate the contract. (Doc. 15-1, p. 9.)

The Court agrees with Defendant's first argument, and consequently has no need to reach its second. "When parties contract to arbitrate future disputes, they may choose to incorporate a delegation provision, which is 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (quoting *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. 2018) (en banc) (internal citation omitted)). A delegation provision may allow the arbitrator to decide any number of "gateway questions," including "the validity of the arbitration agreement itself." *Shockley*, 929 F.3d at 1018. Plaintiff does not dispute that the Arbitration Policy includes a Delegation Clause, nor that the Clause assigns questions about the formation and validity of the arbitration agreement to the arbitrator.

If an arbitration agreement contains a delegation clause, then the Court considers only certain types of challenges to the enforceability of the agreement. Under Missouri law, a "delegation provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 50 (Mo. 2017) (en banc). In other words, "just as an arbitration agreement can be a standalone contract within an employment agreement, a delegation provision 'is simply an additional, antecedent agreement' within an arbitration agreement." *Shockley*, 929 F.3d at 1018 (quoting *Soars*, 563 S.W.3d at 114). Therefore, "[a]s a severable and presumably valid provision of a contract, a delegation provision must be specifically

4

challenged." *Shockley*, 929 F.3d at 1018. If a delegation provision is "not challenged directly," the Court must "presume the delegation provision is valid, and, as a result, [send] antecedent questions such as an arbitration contract's validity . . . to the arbitrator." *Id*. (citing *Pinkerton*, 531 S.W.3d at 50).

Plaintiff's only response to the Delegation Clause is that it is part of the Arbitration Policy, and that she never fully assented to that Policy because she failed to check the class action box on the Handbook Acknowledgment. (Doc. 20, pp. 10–11.) She cites *Theroff v. Dollar Tree Stores, Inc.*, where the court declined to enforce a delegation provision against a legally blind employee who claimed that she was not aware that she was signing an arbitration agreement because she could not see or read the contract. 591 S.W.3d 432 (Mo. 2020) (en banc). This argument misses the mark; in *Theroff*, the plaintiff mounted a direct challenge against the delegation provision, because a person who claims she was physically incapable of reading a contract "necessarily challenges the existence of any delegation provision [the contract] contains." *Id*. at 440. Unlike the plaintiff in *Theroff*, here, Plaintiff not only read the Arbitration Policy (and consequently, the Delegation Clause), but acknowledged its incorporation in her employment contract three separate times. (Docs. 15-4, 15-5, and 15-6.) Thus, the Court concludes that Plaintiff's failure to check the class action box on the Handbook Acknowledgment is insufficient to sustain a direct challenge to the Delegation Clause.

But even if Plaintiff's argument cast doubt on the Delegation Clause as incorporated in the Handbook Acknowledgement, she also signed two other agreements incorporating the Arbitration Policy: the Consultant Agreement, (Doc. 15-5), and the Travel Assignment Agreement, (Doc. 15-6). Plaintiff argues that if she "rejected" the Arbitration Policy in the Handbook Acknowledgment,

"it could no longer be incorporated by reference by any related agreements." (Doc. 20, p. 8.) The Court disagrees; Plaintiff could very easily have rejected one offer incorporating the Arbitration Policy and accepted another, in which case she would still be bound by the Policy. Thus, even if Plaintiff's argument about her refusal to check the class action box is a "direct attack" on the Delegation Clause incorporated in the Handbook Acknowledgment, the argument does not affect the incorporation of the Clause in the remaining two agreements.

In sum, the issue before the Court is not whether the Arbitration Policy was incorporated into a valid contract between Plaintiff and Defendant, but who gets to make that decision. And in the absence of a direct challenge to the Delegation Clause, the Arbitrator must decide.

### III. CONCLUSION

The Court agrees with Plaintiff that a stay, rather than dismissal, is the appropriate course. *See, e.g., Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932, 943 (E.D. Mo. 2015). Therefore, for the reasons discussed above, Defendant's motion, (Doc. 15), is **GRANTED** and this case is stayed pending arbitration. Plaintiff must initiate arbitration and notify the Court when she does so. Thereafter, the parties must file a joint status report every six months until the arbitration is complete.

**IT IS SO ORDERED.**

Date: November 4, 2020

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT